

CLERK'S OFFICE
A TRUE COPY
Sep 16, 2025
s/MMK
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

❒ Original      ❒ Duplicate

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.   25   MJ   158
the Apple iCloud account associated with cellular )
number 787-238-6630 and email )
CarlosO77@icloud.com )

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location):*

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before   09/30/2025   *(not to exceed 14 days)*
❒ in the daytime 6:00 a.m. to 10:00 p.m.   ❒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to   Honorable William E. Duffin   .
*(United States Magistrate Judge)*

❒ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❒ for _____ days *(not to exceed 30)*  ❒ until, the facts justifying, the later specific date of _____ .

Date and time issued:   09/16/2025 at 9:50 a.m.      *William E. Duffin*
                                                    *Judge's signature*

City and state:   Milwaukee, Wisconsin      William E. Duffin, U.S. Magistrate Judge
                                              *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information from the iCloud account associated with cellular number 787-238-6630 and/or email address CarlosO77@icloud.com (**"TARGET ACCOUNT"**) that is stored at premises owned, maintained, controlled, or operated by Apple Inc., a company headquartered at One Apple Park Way, Cupertino, California.

## ATTACHMENT B

## Particular Things to be Seized

## I.  Information to be disclosed by Apple Inc. ("Apple")

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Apple, Apple is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a. All records or other information regarding the identification of the accounts, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the accounts were created, the length of service, the IP address used to register the accounts, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b. All records or other information regarding the devices associated with, or used in connection with, the accounts (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

c. The contents of all emails associated with the accounts from January 1, 2023 to the present, including stored or preserved copies of emails sent to and from the accounts (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

d.    The contents of all instant messages associated with the accounts from July 22, 2024 to the present, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the accounts (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

e.    The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

f.    All activity, connection, and transactional logs for the accounts (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

g.    All records and information regarding locations where the accounts or devices associated with the accounts were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps;

h.    All records pertaining to the types of service used;

i.    All records pertaining to communications between Apple and any person regarding the accounts, including contacts with support services and records of actions taken; and

j.    All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

Apple is hereby ordered to disclose the above information to the government within **14 DAYS** of issuance of this warrant.

**II.    Information to be seized by the government**

All information described above in Section I that constitutes evidence and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, those violations involving Carlos O. SANTANA-RAMOS and others known and unknown, and occurring after July 22, 2024, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) The sale of illegal drugs and the laundering of proceeds of drug sales;

(b) Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(c) Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(e) The identity of the person(s) who communicated with the user ID about matters relating to drug trafficking, including records that help reveal their whereabouts.



CLERK'S OFFICE
A TRUE COPY
Sep 16, 2025
s/ MMK
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. 25 MJ 158 |
| the Apple iCloud account associated with cellular number 787-238-6630 and email CarlosO77@icloud.com | ) ) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution of a controlled substance, conspiracy, and unlawful use of a |
| 21 U.S.C. § 846 | communication facility. |
| 21 U.S.C. § 843(b) | |

The application is based on these facts:

See attached Affidavit.

☐ Continued on the attached sheet.

☑ Delayed notice of _365_ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

PATRICK COE

Digitally signed by PATRICK COE
Date: 2025.09.15 12:44:45 -05'00'

*Applicant's signature*

Patrick Coe, DEA Task Force Officer

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____telephone_____ *(specify reliable electronic means).*

Date: 09/16/2025

*Judge's signature*

City and state: Milwaukee, Wisconsin

William E. Duffin, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Patrick Coe, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information from the iCloud account associated with cellular number 787-238-6630 and/or email address CarlosO77@icloud.com (**"TARGET ACCOUNT"**) that is stored at premises owned, maintained, controlled, or operated by Apple Inc. ("Apple"), an electronic communications service and/or remote computing service provider headquartered at One Apple Park Way, Cupertino, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Apple to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.      I am a Task Force Officer with the Drug Enforcement Administration, (DEA) and have been since November of 2020. I have been an officer with the Milwaukee Police Department (MPD) since July of 2010.

3.      I am currently assigned to the DEA Milwaukee District Office Group 62 Task Force. In my duties I work alongside members High Intensity Drug Trafficking Area ("HIDTA") Interdiction Task Force and USPIS.  The USPIS Milwaukee Office investigates USPS customers involving narcotics, prohibited mailings, controlled substances, and other matters related to the

Postal Service. The Milwaukee office's team has intercepted numerous parcels, which were found to contain narcotics or proceeds of narcotics trafficking and other criminal activity.

4.     I have participated in numerous complex narcotics investigations which involved violations of state and federal controlled substances laws including Title 21, United States Code, Sections 841(a)(1) and 846 (possession with intent to distribute a controlled substance and conspiracy to possess with intent to distribute a controlled substance), and other related offenses. I have had both formal training and have participated in numerous complex drug trafficking investigations, including ones using wiretaps.

5.     As a part of my duties, I investigate criminal violations relating to narcotics trafficking offenses, including violations of Title 21, United States Code, Sections 841, 843, and 846, and federal firearms offenses, including violations of Title 18, United States Code, Sections 922(g), 924(a), and 924(c). In the course of my experience, I have and continue to be involved in investigations of criminal offenses and have assisted with search warrants for items related to gang investigations, organized crime, violent crime, firearms offenses, drug trafficking, including cellular telephones and other electronic telecommunication devices.

6.     I have had formal training in the investigation of drug trafficking. I have worked with informants in the investigation of drug trafficking. I have participated in the execution of numerous search warrants in which controlled substances, firearms, drug paraphernalia, and monies were seized.

7.     This affidavit is based upon my personal knowledge and upon information provided to me by other federal, state, and local law enforcement officers during the course of their official duties. Throughout this affidavit, I refer to case agents. Case agents or investigators are those

2

federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom I have had regular contact regarding this investigation.

8. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

9. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Section 841(a)(1), 843(b), and 846 have been committed by Carlos O. SANTANA-RAMOS (W/M, XX-XX-1977), and others known and unknown. There is also probable cause to search the information described in Attachment A for evidence and instrumentalities of these crimes further described in Attachment B.

## JURISDICTION

10. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

11. The United States, including the Drug Enforcement Administration (DEA), along with the Milwaukee Police Department, is conducting a criminal investigation of Jose Angel DELMORAL-LEBRON, Carlos O. SANTANA-RAMOS, and others regarding violations of Title 21, United States Code, Sections 841(a)(1) (Distribution and Possession with Intent to Distribute a Controlled Substance), 846 (Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance), and 843(b) (Unlawful Use of a Communication Facility, including the mails, to Facilitate the Distribution of a Controlled Substance).

3

12.     In June 2025, investigators learned of a subject identified as Jose A. DELMORAL-LEBRON (W/M, DOB: XX-XX-1996), who was suspected of distributing large amounts of cocaine within Milwaukee, Wisconsin. Your Affiant suspected that DELMORAL-LEBRON was receiving kilogram quantities of cocaine from Puerto Rico by way of the United States Postal Service.

13.     On July 1, 2025, while acting in an undercover capacity, your Affiant met DELMORAL-LEBRON. DELMORAL-LEBRON inferred that he received multiple kilograms of cocaine every month, which he would sell for approximately $600.00 an ounce. DELMORAL-LEBRON provided your Affiant the phone number 414-914-0643 to contact him to arrange future cocaine transactions.

14.     On July 9, 2025, your Affiant contacted DELMORAL-LEBRON at 414-914-0643 to arrange the purchase of two ounces of cocaine. On this occasion, your Affiant and DELMORAL-LEBRON communicated with each other via text message and phone calls.  During a recorded phone call, DELMORAL-LEBRON and your Affiant arranged to conduct a cocaine transaction on July 10, 2025 at 3441 South 27th Street, Milwaukee, Wisconsin, which is the location for Southgate Marketplace shopping plaza.  DELMORAL-LEBRON agreed to sell two ounces of cocaine for $1200.

15.     On July 10, 2025, at approximately 11:00 a.m., your Affiant drove to 3441 South 27th Street, Milwaukee, Wisconsin to meet with DELMORAL-LEBRON to purchase two ounces of cocaine for $1200. Upon arrival at the agreed location, your Affiant observed DELMORAL-LEBRON parked in the shopping plaza's parking lot.  DELMORAL-LEBRON was inside a silver Subaru Forester, bearing Wisconsin plates numbered AZW-3782, which was registered to DELMORAL-LEBRON, having an address listed as 2650 South 51st Street, Milwaukee,

4

Wisconsin. Your Affiant parked next to DELMORAL-LEBRON, who then exited his vehicle and entered the passenger side of your Affiant's vehicle. At that time, DELMORAL-LEBRON produced a white Walgreens bag, which your Affiant observed contained a clear plastic sandwich bag filled with a white chunky substance. Based on training and experience, your Affiant immediately recognized the white chunky substance as suspected cocaine. In exchange for the bag containing the suspected cocaine, your Affiant gave DELMORAL-LEBRON $1200. DELMORAL-LEBRON then informed your Affiant that he would later contact your Affiant to provide a new contact phone number.

16.     DELMORAL-LEBRON exited your Affiant's vehicle, returned to his silver Subaru, and departed from his parking spot to a US Cellular store located at 3415 South 27th Street Milwaukee, Wisconsin, which is located in the same shopping plaza. Investigators surveilled DELMORAL-LEBRON for approximately 30 to 60 minutes while he was inside the store until he exited the store with a shopping bag. DELMORAL-LEBRON then entered his silver Subaru Forester and departed from the shopping plaza.

17.     Investigators followed DELMORAL-LEBRON from the shopping plaza to his residence at 2650 S 51st Street, Milwaukee, Wisconsin 53219 where investigators observed him driving onto the driveway and into the garage for the residence. Investigators then observed DELMORAL-LEBRON use keys to enter the residence through the side door.

18.     Following the transaction, your Affiant took the suspected cocaine to the DEA Milwaukee District Office where your Affiant conducted a field test on the suspected drug, which indicated the substance tested positive for the active ingredients of cocaine. The substance weighed 58.1 grams.

5

19.     On Friday, July 12, 2025, DELMORAL-LEBRON sent your Affiant a text message from phone number 262-464-9564. DELMORAL-LEBRON informed your Affiant that 262-464-9564 was his new phone number and told your Affiant to save the phone number.

20.     On Wednesday, August 20, 2025, your Affiant drove to DELMORAL-LEBRON's suspected residence, located at 2650 South 51st Street, Milwaukee, Wisconsin 53219.  On this occasion, your Affiant retrieved the contents of the City of Milwaukee garbage receptacle placed in front of 2650 South 51st Street, Milwaukee, Wisconsin 53219, beyond the curbline, in the city street.  After searching the contents of the garbage receptacle, your Affiant recovered several discarded mailings addressed to "Jose A. Delmoral" at 2650 S. 51st Street. Milwaukee, Wisconsin 53219.  Your Affiant continued searching the contents of the garbage receptacle and observed several clear plastic sandwich bags with the corners of the bags cut out.  Your Affiant knows, based on training and experience, that clear plastic corner cut bags are often used by drug dealers to hold, transport, and distribute narcotics.

21.     Your Affiant confirmed with the Wisconsin Department of Transportation that DELMORAL-LEBRON listed 2650 S. 51st Street, Milwaukee, Wisconsin 53219 as his residential address. Furthermore, your Affiant confirmed with the Wisconsin Department of Transportation that DELMORAL-LEBRON registered the silver Subaru Forester to the address 2650 S. 51st Street, Milwaukee, Wisconsin 53219.

22.     Your Affiant submitted an administrative subpoena to We Energies to identify the utility holders for both the upper and lower units of 2650 S. 51st Street, Milwaukee, Wisconsin 53219.  We Energies disclosed that Jose A. DELMORAL-LEBRON was the active utility holder for 2650 S 51st Street (Lower), Milwaukee, Wisconsin 53219 while an individual unconnected to this investigation was the active utility holder for the upper residential unit.

6

23.     Based on the above information, on August 22, 2025, your Affiant obtained a state warrant to search the residence located at 2650 S. 51st Street (Lower), Milwaukee, Wisconsin 53219.  On Tuesday, August 26, 2025, law enforcement officers executed the search warrant at the residence. DELMORAL-LEBRON was in the driveway outside the residence when law enforcement arrived to execute the search warrant. Upon searching the residence, investigations located several identifiers for DELMORAL-LEBRON; several small digital scales, some having a white powdery substance on them; several cellular phones; several opened boxes of small clear plastic bags; a fully-loaded Glock 9mm handgun; and several unspent rounds.  During this time, DELMORAL-LEBRON admitted to living in the lower unit at 2650 S. 51st Street, Milwaukee, Wisconsin 53219.

24.     As noted above, during the residential search warrant, your Affiant recovered DELMORAL-LEBRON's cellular phone. DELMORAL-LEBRON provided investigators with consent to search his cellular phone, which was assigned cellular number 414-914-0643. After searching the cellular phone, your Affiant observed a WhatsApp conversation between the user of 414-914-0643 (believed to be DELMORAL-LEBRON) and an unidentified individual assigned the contact name "El Viejo" with corresponding phone number787-238-6630.  Based on previous investigations, your Affiant recognized "787" as an area code associated with Puerto Rico.  When reviewing the WhatsApp conversation between the user of 414-914-0643 (believed to be DELMORAL-LEBRON) and "El Viejo," your Affiant noticed numerous WhatsApp text messages covering several days that had been deleted as indicated by text notices reading "you deleted this message." The remaining messages were at the remainder of the conversation is in Spanish and had to be translated to English.

7

25.     Upon reviewing the surviving WhatsApp text messages, your Affiant observed an August 3, 2024 WhatsApp text exchange between the user of 414-914-0643 (believed to be DELMORAL-LEBRON) and "El Viejo" where the user of 414-914-0643 (believed to be DELMORAL-LEBRON) told "El Viejo" to call him. The next day, "El Viejo" began a conversation by sending a message using the iCloud account email address CarlosO77@icloud.com.

26.     Your Affiant observed an August 24, 2025 conversation initiated by the user of 414-914-0643 (believed to be DELMORAL-LEBRON) to "El Viejo" that began, "good morning, tell me something." The next four messages from "El Viejo" had been deleted. The user of 414-914-0643 (believed to be DELMORAL-LEBRON) responded with an unrecoverable, unreadable, vanishing picture message marked as "opened." "El Viejo" responded with a message that had been deleted and the user of 414-914-0643 (believed to be DELMORAL-LEBRON) responded to "El Viejo" with three messages that had been deleted. On August 24, 2025, at 1:48 p.m., "El Viejo" messaged the user of 414-914-0643 (believed to be DELMORAL-LEBRON) the word "Down" to which the user of 414-914-0643 (believed to be DELMORAL-LEBRON) responded, "That's it." "El Viejo" responded, "Ill let you know," to which the user of 414-914-0643 (believed to be DELMORAL-LEBRON) responded, "Ok."

27.     On August 26, 2025, the user of 414-914-0643 (believed to be DELMORAL-LEBRON) sent "El Viejo" an unrecoverable, vanishing picture message marked as "opened." On the same date, at 12:22 p.m., "El Viejo" responded, "Tomorrow it starts" and "At this time I tell you." The user of 414-914-0643 (believed to be DELMORAL-LEBRON) responded, "Ok."

28.     When your Affiant searched the phone number 787-328-6630 in the Cashapp application, your Affiant observed that the phone number was linked to Cashapp account handle "$CalosORamo" and the name "Carlos."

29.     Investigators ran phone number 787-328-6630 in a DEA database and observed that a subject identified as Carlos Omar SANTANA-RAMOS, (W/M, 10-21-1977) was associated with this phone number. Investigators observed that the phone number was involved in several DEA drug investigations, including an investigation where the user of the phone number 787-328-6630 was in contact with a suspected cocaine distributor in Connecticut and another investigation where the user of the phone number 787-328-6630 was in contact with a subject coordinating a shipment of over 230 kilograms of cocaine from the Dominican Republic to Puerto Rico.

30.     On August 29, 2025, your Affiant spoke with United States Postal Inspector (USPI) Tyler Fink, who informed your Affiant that he was in possession of a suspicious parcel mailed from Puerto Rico and addressed to 2650 South 51st Street, Milwaukee, Wisconsin (i.e., the location of DELMORAL-LEBRON's residence). More specifically, the parcel was a 12" x 12" x 10" USPS priority mail parcel, having tracking number 9505510977415237395056, and a handwritten shipping label indicating it is from "Jose Rodriguez Pueblo 12 Calle Modesto Sola Caguas P.R. 00725" and addressed to "Luis Adorno 2650 S 51st ST Milwaukee Wi 53219." On Monday, September 1, 2025, a narcotics-detecting canine alerted to the presence of contraband inside this parcel. The following day, USPI Fink obtained a federal warrant to search the contents of the parcel. Upon executing the warrant, USPI Fink found a wrapped kilogram-sized that contained a white substance that field tested positive for cocaine and weighed 1035 grams.

31.     Investigators determined that this cocaine-laden parcel was postmarked in Puerto Rico on August 26, 2025, and scheduled to arrive at 2650 South 51st Street, Milwaukee, Wisconsin

9

on August 29, 2025, which coincides with the numerous deleted WhatsApp text communications between "El Viejo" and the user of 414-914-0643 (believed to be DELMORAL-LEBRON) occurring between August 24, 2025 and August 26, 2025. In particular, "El Viejo's" August 26, 2025 texts "Tomorrow it starts" and "At this time I tell you" appear to be a direct reference to the cocaine-laden parcel scheduled to arrive at 2650 South 51st Street, Milwaukee, Wisconsin the next day, i.e., August 27, 2025.

32. As your Affiant continued to search DELMORAL-LEBRON's cellular phone (i.e., the cellular phone assigned number 414-914-0643), your Affiant found several more cryptic and deleted messages between "El Viejo" and the user of 414-914-0643 (believed to be DELMORAL-LEBRON). These WhatsApp text communications coincided with dates that suspicious USPS parcels originating from Puerto Rico were scheduled to arrive at 2650 South 51st Street, Milwaukee, Wisconsin (i.e., the location of DELMORAL-LEBRON's residence). Your Affiant also observed photographs in DELMORAL-LEBRONS cellular phone depicting what appeared to be kilogram bricks of cocaine having the same dates as when several of these suspicious USPS parcels were scheduled to arrive at 2650 South 51st Street, Milwaukee, Wisconsin (i.e., the location of DELMORAL-LEBRON's residence).

33. Based on the above information, your Affiant suspects that Carlos Omar SANTANA-RAMOS (W/M, XX-XX-1977) is the user of iCloud account CarlosO77@icloud.com associated with cellular phone number 787-238-6630. Your Affiant believes that SANTANA-RAMOS and DELMORAL-LEBRON have been working together to traffic cocaine from Puerto Rico to Milwaukee, Wisconsin. Your Affiant suspects that SANATA-RAMOS's iCloud account will possess information relevant to of his involvement in trafficking kilogram quantities of cocaine from Puerto Rico to Milwaukee, Wisconsin.

10

## BACKGROUND CONCERNING APPLE[1]

34.     Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

35.     Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps").  As described in further detail below, the services include email, instant messaging, and file storage:

     a.   Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

     b.   iMessage and FaceTime allow users of Apple devices to communicate in real-time.  iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct audio and video calls.

     c.   iCloud is a cloud storage and cloud computing service from Apple that allows its users to interact with Apple's servers to utilize iCloud-connected services to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device.  For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on iCloud.com.  iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers.  iCloud Drive can be used to store presentations, spreadsheets, and other documents.  iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices.  iCloud Backup allows users to create a backup of their device data.  iWork Apps, a suite of productivity apps (Pages, Numbers, Keynote, and Notes), enables iCloud to be used to create,

---

[1] The information in this section is based on information published by Apple on its website, including, but not limited to, the following document and webpages: "U.S. Law Enforcement Legal Process Guidelines," available at https://www.apple.com/legal/privacy/law-enforcement-guidelines-us.pdf; "Create and start using an Apple ID," available at https://support.apple.com/en-us/HT203993; "iCloud," available at http://www.apple.com/icloud/; "What does iCloud back up?," available at https://support.apple.com/kb/PH12519; "iOS Security," available at https://www.apple.com/business/docs/iOS_Security_Guide.pdf, and "iCloud: How Can I Use iCloud?," available at https://support.apple.com/kb/PH26502.

11

store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

d. Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

e. Find My iPhone allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of those devices. Find My Friends allows owners of Apple devices to share locations.

f. Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

g. App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

36. Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services. The account identifier for an Apple ID is an email address, provided by the user. Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail). The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address. Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user. A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

12

37.     Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers.  The user may also provide means of payment for products offered by Apple.  The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website.  In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

38.     Additional information is captured by Apple in connection with the use of an Apple ID to access certain services.  For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website.  Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account.  Records relating to the use of the Find My iPhone service, including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

39.     Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card.  Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs into FaceTime or iMessage.  Apple also may maintain records of

13

other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number.  In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com.  Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

40.    Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space.  That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain).  iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data.  Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud Drive.  Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple.

41.    In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the

14

files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

42. For example, the stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation. Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

43. In addition, the user's account activity, logs, stored electronic communications, and other data retained by Apple can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

44. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan

15

to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

45.    Other information connected to an Apple ID may lead to the discovery of additional evidence.  For example, the identification of apps downloaded from App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators.  In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

46.    Therefore, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services.  In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## **CONCLUSION**

47.    Based on the forgoing, I request that the Court issue the proposed search warrant.

48.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving the warrant on Apple.  Because the warrant will be served on Apple, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

16

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information from the iCloud account associated with cellular number 787-238-6630 and/or email address CarlosO77@icloud.com **("TARGET ACCOUNT")** that is stored at premises owned, maintained, controlled, or operated by Apple Inc., a company headquartered at One Apple Park Way, Cupertino, California.

## ATTACHMENT B

### Particular Things to be Seized

### I.    Information to be disclosed by Apple Inc. ("Apple")

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Apple, Apple is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.    All records or other information regarding the identification of the accounts, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the accounts were created, the length of service, the IP address used to register the accounts, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b.    All records or other information regarding the devices associated with, or used in connection with, the accounts (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

c.    The contents of all emails associated with the accounts from January 1, 2023 to the present, including stored or preserved copies of emails sent to and from the accounts (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

d.      The contents of all instant messages associated with the accounts from July 22, 2024 to the present, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the accounts (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

e.      The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

f.      All activity, connection, and transactional logs for the accounts (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

g.      All records and information regarding locations where the accounts or devices associated with the accounts were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps;

h.      All records pertaining to the types of service used;

i.      All records pertaining to communications between Apple and any person regarding the accounts, including contacts with support services and records of actions taken; and

j.      All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

Apple is hereby ordered to disclose the above information to the government within **14 DAYS** of issuance of this warrant.

## II.    Information to be seized by the government

All information described above in Section I that constitutes evidence and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, those violations involving Carlos O. SANTANA-RAMOS and others known and unknown, and occurring after July 22, 2024, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) The sale of illegal drugs and the laundering of proceeds of drug sales;

(b) Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(c) Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(e) The identity of the person(s) who communicated with the user ID about matters relating to drug trafficking, including records that help reveal their whereabouts.